JUDE G. GRAVOIS, Judge.
| gDefendant, Jacole Gatlin, has appealed his conviction following a jury trial of possession with intent to distribute marijuana in which the trial court allowed introduction of “other crimes” evidence regarding his prior conviction for possession of marijuana with the intent to’ distribute. For the reasons that follow, we affirm defendant’s conviction and sentence. We further remand the matter for correction of an error patent as noted herein.

PROCEDURAL HISTORY

On June 3, 2013, the Jefferson Parish District Attorney filed a bill of information charging defendant with one count of possession with intent to distribute marijuana, a violation of La. R.S. 40:966(A). Defendant pled not guilty at his arraignment on June 19, 2013.
On July 31, 2013, pursuant to La. C.E. art. 404, the State filed a notice of intent to use evidence of similar crimes committed by defendant. The trial court granted the State’s motion to introduce evidence of “other crimes” prior to the trial Ron September 12, 2013. Defendant then proceeded to a jury trial on September 12-13, 2013.
At the conclusion of the trial, defendant was found guilty of possession with the intent to distribute marijuana. Defendant filed a motion for a new trial, which was denied on September 18, 2013. Defendant was then sentenced to twenty years imprisonment at hard labor with credit for time served. The State thereafter filed a habitual offender bill of information alleging that defendant was a second felony offender, to which defendant stipulated. Defendant’s original sentence was vacated, *893 and he was resentenced pursuant to La. R.S. 15:529.1 to twenty years imprisonment at hard labor without the benefit of probation or suspension of sentence, with credit for time served. Defendant timely filed a motion for an appeal, which was granted on September 18, 2018.

FACTS

On May 9, 2013, Detective Nicki M. Gamier, Jr. of the Jefferson Parish Sheriffs Office was in a marked police unit performing routine duties, including traffic stops, on the West Bank of Jefferson Parish. According to his trial testimony, at approximately 10:00 a.m. that day, Detective Gamier was traveling south on Des-trehan Avenue in Jefferson Parish behind a black Toyota Corolla, which had a brake light that was not illuminating. He activated his overhead fights and sirens and conducted a traffic stop of the vehicle. Once the vehicle pulled over, Detective Gamier approached the vehicle and observed a black male sitting in the driver’s seat.[1] Detective Gamier testified that defendant opened his door and had his feet out of the car and on the pavement facing outward toward him. While defendant was searching for his license, registration, and insurance, Detective Gamier smelled a strong odor of marijuana and also observed a “small green leafy Rsubstance” in plain view on the floorboard of the driver’s side of the vehicle. He then asked defendant if he was in possession of any illegal narcotics or weapons, to which defendant replied “No.”
Detective Gamier then asked defendant to exit the vehicle and advised him of his Miranda[2] rights and that he was being detained for “possibly being in possession of marijuana.” For “officer safety,” defendant was placed in handcuffs and detained in the back of Detective Garnier’s marked patrol unit. Meanwhile, Detective Kevin McGuffie arrived at the scene. After Detective Gamier told Detective McGuffie about the green leafy substance found on the floorboard, both officers conducted a search of the vehicle. As Detective Gamier retrieved a “small bud” of green, leafy substance off the floorboard, he observed an open, brown satchel on the passenger seat. Inside the satchel was “another large plastic bag containing a green, leafy substance,” as well as one black scale, sandwich bags, and currency wrapped in two rubber bands. The contents of the satchel were later logged into evidence.
Detective Gamier then placed defendant under arrest for possession with intent to distribute marijuana. He again advised defendant of his Miranda rights, and defendant indicated that he understood them. Detective Gamier then spoke with defendant. Detective Gamier testified that defendant claimed ownership of the satchel and the contents inside the satchel. He also told Detective Gamier that he “only sells narcotics when he’s low on money.” During this time, Detective McGuffie counted the currency and then left the scene. Detective Gamier proceeded to the Detective Bureau where a test confirmed that the substance found was marijuana. On cross-examination, Detective Gamier testified that he wrote defendant a citation for driving with a broken tailfight.
| ¡¿Deputy Kevin McGuffie, an employee of Jefferson Parish Sheriffs Office, testified that on May 9, 2013, as a matter of police protocol and for back-up purposes, he went to the scene where Detective Gar-nier made the traffic stop of defendant and *894 assisted him in the investigation.[3] When he arrived on the scene, defendant had already been detained in the rear of a patrol car. After Detective Gamier informed him of the events, they approached the vehicle together, with Deputy McGuf-fie on the passenger side. During his approach, Deputy McGuffie observed the “strong, pungent odor of marijuana emanating from the interior of the vehicle.” When he opened the passenger side door of the vehicle, Deputy McGuffie saw a brown satchel on the passenger’s seat. According to Deputy McGuffie, “[ijnside of that satchel, in plain view, satchel was open, and there was a large, clear, plastic bag containing a green, vegetable matter. As well as a box of sandwich bags, and a black digital scale, and a large sum of United States currency.” Deputy McGuf-fie identified State’s Exhibits 1 and 2, as all contents of the satchel, including marijuana, that he saw on the traffic stop of May 9, 2013.
After the court gave limiting instructions regarding the following “other crimes” testimony, Anne Nini testified that she was the dean of students at John Ehret High School on February 13, 2012. She and another dean searched defendant[4] in her office, at which time defendant removed a bag of marijuana from his sweatshirt pocket. Ultimately, defendant removed 28 bags of marijuana from his sweatshirt. Ms. Nini called the campus officer, Deputy Brian Johnson, who took possession of the marijuana.
Deputy Brian Johnson, an employee of the Jefferson Parish Sheriffs Office, was working as “police on campus” at John Ehret High School on February 13, |fi2012. He stated at trial that after encountering Ms. Nini and defendant,[5] he was presented with a bag of what appeared to be a “green leafy substance.” He contacted “crime scene” to have it tested and later logged it into evidence. Deputy Johnson identified State’s Exhibit 5 as the same bag that was given to him on February 13, 2012.[6] After testing confirmed that the substance was marijuana, Deputy Johnson advised defendant of his Miranda rights. Defendant then told Deputy Johnson that “that was marijuana, and he said this is the way to make ends meet.”[7]
At trial, Michael Cole, a forensic drug analyst[8] for the Jefferson Parish Sheriffs Office crime lab, explained the process by which substances are tested in their lab. He analyzed the narcotics in this case and generated a scientific analysis report in connection with his work.[9] He identified State’s Exhibit 2 as the subject of his report, which concluded that the vegetative material was marijuana. He further confirmed that he tested State’s Exhibit 5, which also tested positive as marijuana.[10]
*895 Desnee Jones, defendant’s girlfriend since 2011, testified at trial on behalf of the defense. She testified that in 2011, she moved in with defendant and his grandfather. She did not have a job at that time, but would sell marijuana to make money, an activity she was engaged in prior to meeting defendant.[11]
|7On May 9, 2013, Ms. Jones was attending Delgado Community College in Harvey. That morning, she had received texts from people who wanted to purchase marijuana from her, but she responded to them that she “had to go to school.” Defendant drove her to school for a final exam. She “grabbed [her] bag” and “put everything in there.” Ms. Jones identified State’s Exhibit 1 as the bag she was referring to in her testimony. She clarified that she put “my money,” “my sandwich bags,” “the rest of the weed,” and “my scale” into the bag. Ms. Jones also identified the marijuana that she said she had packaged that morning as State’s Exhibit 2. She stated that she placed the entire bag in the front passenger seat. The bag was closed as she rode with defendant. Her plans for the day were to go to school to take an exam, have defendant pick her up from school, sell the marijuana, collect money from the sales, and then purchase more marijuana. After defendant had dropped her off, he called her to ask where the insurance papers for the car were because he had been pulled over. She indicated that the papers were in the glove compartment, and then defendant hung up. The car defendant was driving at the time of the stop was in Ms. Jones’ father’s name, but it was her car. Ms. Jones said that she gave her testimony because she did not want defendant to go jail for something that she had done.
On cross-examination, Ms. Jones testified that she and defendant had a “serious” relationship and that she loved him. Ms. Jones had no prior convictions and agreed that defendant “would be in more trouble if convicted” than she would be. She was aware that defendant had been previously convicted for possession with intent to distribute marijuana. Ms. Jones said that she left the bag in the car with defendant so that it would be there when he picked her up after her exam. She had planned to drop defendant off before she went to conduct her drug sales.
, ^According to Ms. Jones, defendant did not have a job in May of 2013. Ms. Jones believed that defendant’s income came from his grandfather. Selling marijuana was Ms. Jones’ major source of income. Ms. Jones said that she has not sold marijuana since the time that defendant was arrested. She admitted that she never told a law enforcement officer that the marijuana found in the car with defendant was hers, and the only other person she talked to about it was defendant’s attorney.

ASSIGNMENT OF ERROR

Introduction of “other crimes” evidence

In his sole assignment of error, defendant argues that the trial court erred in *896 allowing introduction of “other crimes” evidence concerning his prior conviction of possession of marijuana with intent to distribute, because that evidence was so unduly prejudicial that it outweighed its probative value as to any issue in the charge at trial.
On July 31, 2013, the State filed, pursuant to La. C.E. art. 404, a notice of intent to use evidence of similar crimes committed by defendant. Specifically, the State sought to introduce evidence at trial that “[o]n February 13, 2012, the defendant was arrested for possession with the intent to distribute marijuana near a school under Item B-12856-12. He later plead [sic] guilty as charged to this offense in case 12-1714.” The State asserted that the introduction of the evidence would go toward showing “identity, motive, intent, preparation, plan and absence of mistake or accident.” No motion in opposition was filed by defendant.
On September 12, 2013, the trial court, relying on this Court’s opinion in State v. Temple, 01-655 (La.App. 5 Cir. 12/12/01), 806 So.2d 697, writ denied, 02-0234 (La.1/31/03), 836 So.2d 58, granted the motion allowing the evidence to be admitted at trial for the purpose of showing intent. The trial court noted that prior |9to the State’s presentation pf such evidence at trial, the court would provide the jury with a limiting instruction. Defendant’s counsel requested that his objection be noted for the record.
At trial, after the court gave the limiting instruction to the jury, the State presented testimony of Anne Nini, Deputy Brian Johnson, and Michael Cole relating to defendant’s previous arrest and subsequent conviction of possession with the intent to distribute marijuana. It also submitted as State’s Exhibit 7 the certified copy of defendant’s prior conviction from the incident of February 13, 2012.
Generally, evidence of “other crimes” or bad acts committed by a criminal defendant is not admissible at trial. La. C.E. art. 404(B)(1); State v. Davis, 13-237 (La. App. 5 Cir. 10/30/13), 128 So.3d 1162, 1164, writ denied, 13-2751 (La.5/23/14), 140 So.3d 723. Though such evidence cannot be used to prove the character of a person in order to show that he acted in conformity therewith, it is admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. La. C.E. art. 404(B)(1).
In order for “other crimes” evidence to be admitted, one of the above-enumerated factors must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible. State v. Jackson, 625 So.2d 146, 149 (La.1993). Additionally, the probative value of such evidence must be weighed against its prejudicial effect. State v. Lisotta, 97-406 (La.App. 5 Cir. 2/25/98), 712 So.2d 527, 530.
The burden is on the defendant to show that he was prejudiced by the trial court’s admission of “other crimes” evidence. Temple, 01-655, 806 So.2d at 709. Absent an abuse of discretion, a trial court’s ruling on the admissibility of evidence | inpursuant to La. C.E. art 404(B)(1) will not be disturbed. State v. Williams, 02-645 (La.App. 5 Cir. 11/26/02), 833 So.2d 497, 507, writ denied, 02-3182 (La.4/25/03), 842 So.2d 398.
On appeal, defendant specifically asserts that the State failed to show that facts of his prior conviction have independent relevance, that the prejudicial effect of the evidence outweighed its probative value, and that the admission of the evidence did not amount to harmless error.

*897
Independent Relevance

Defendant contends on appeal that “No one in good faith could contend that intent or motive were at issue or at play as possible avenues of defense.” In this case, however, defendant was charged with possession with intent to distribute marijuana, which requires proof that the defendant knowingly and intentionally possessed the drug and that he or she did so with the specific intent to distribute it. State v. Cho, 02-274 (La.App. 5 Cir. 10/29/02), 831 So.2d 433, 442, writ denied, 02-2874 (La.4/4/03), 840 So.2d 1213.
As argued by the State in its Article 404 motion, and correctly acknowledged by the trial in its ruling on that motion, intent is an essential element of the crime of possession with intent to distribute, and evidence of defendant’s involvement in prior drug deliveries is an exception to the prohibition against evidence of other crimes.
For example, in State v. Quest, 00-205 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866, the defendant was charged with possession with intent to distribute heroin. Pre-trial, the defendant filed a failed motion in limine to exclude evidence of other crimes, specifically, a portion of his confession where he admitted to distributing drugs in New Orleans. Id. at 784. On appeal, the defendant argued that the trial court erred in admitting the /‘other crimes” evidence. Id. In finding this assignment to be without merit, this Court reasoned, in relevant part:
Ordinarily, evidence of other acts of misconduct is inadmissible. However, when evidence of other crimes tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted by certain exceptions to this rule. Evidence of other crimes may be used to show proof of motive, opportunity, intent, preparation, plan, knowledge, or identity. Other crimes evidence is also admissible “when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.” La. C.E. art. 404(B)(1).
Intent is an essential element of the crime of possession with intent to distribute heroin. Previous attempts to distribute may be considered in establishing intent.
In Johnson, we held that evidence of a defendant’s prior conviction for distribution of cocaine - had independent relevance because it satisfied an element of the crime of unlawful possession of a firearm. In this case, the Defendant’s admission that he sold drugs in the past has independent relevance in satisfying the intent element of the crime of possession with intent to distribute heroin.
Id. at 785. (Citations omitted.)
Also, in Temple, supra, the defendant was convicted of possession with intent to distribute heroin and argued on appeal that the State had failed to prove the element of intent. Temple, 01-655, 806 So.2d at 702. In affirming the defendant’s conviction, this Court noted the various ways that the element of intent could be established, including “previous attempts to distribute.” Id. at 709. In that case, this Court found that the testimony of a witness that the defendant had previously directed to make deliveries of drugs was a factor that supported defendant’s conviction. Id.
Based on the foregoing, we find that the “other crimes” evidence at issue had an independent relevance to show intent pertaining to the current offense and was therefore admissible for this purpose under La. C.E. art. 404(B)(1).

*898
11gPrejudicial effect versus probative value

Further, defendant argues that the prejudicial effect of the evidence of defendant’s prior conviction outweighed its probative value. Specifically, 'defendant asserts that the sole purpose and effect of the “other crimes” evidence in this case was merely to portray him in the worst possible light.
This Court considered a similar issue in Temple, supra. In that case, the defendant argued that the probative value of the admission of evidence of his previous involvement with drug deals was outweighed by its prejudicial effect because the evidence “unduly swayed the jury in its determination of guilt because the jury viewed defendant as a ‘bad’ person.” Id. at 709. The defendant further argued that the other crimes evidence “confused the jury and was a collateral issue which distracted the jury’s attention from the main issue.” Id. This Court found these scenarios unlikely, however, based upon the following limiting instruction given by the trial judge immediately preceding the presentation of other crimes evidence, to-wit:
I’m going to advise you at this time that the witness may testify regarding the Defendant’s involvement in the commission of other offenses other than what he is on trial today. This testimony is to be considered only for a limited purpose. The sole purpose for which such evidence may be considered is to show guilty knowledge, absence of mistake or accident, intent, system or motive. Remember, the accused is on trial only for the offense charged. You may not find him guilty of this offense merely because he might have committed another offense.
Id. at 709.
In the instant case, before Ms. Nini testified, the trial court gave the following similar limiting instruction to the jury pri- or to the introduction of evidence pertaining to defendant’s previous conviction of possession with intent to distribute marijuana, to-wit:
I’m going to advise you at this time that the witness may testify regarding the defendant’s involvement in the commission of other offenses other than | mwhat he is on trial for today. “This testimony is to be considered only for a limited purpose, the sole purpose for which such evidence may be considered is to show guilty knowledge, absence of mistake or accident, intent, system or motive. Remember, the accused is on trial only for the offense charged. You may not find him guilty of this offense merely because he might have committed another offense.”
As can been seen, the limiting instruction given by the trial court in Temple is virtually identical to the limiting instruction -given by the trial court in the instant case, and, in fact, quotes from Temple in large part.
Thus, we find that the evidence was properly admitted for the purpose of showing intent. We conclude, as this Court did in Temple, that the limiting instruction given prior to the introduction of the evidence gave clear guidance to the jury that the evidence was not to be used to depict defendant as a “bad person” or as a basis to convict him of the current offense just because he was convicted of a prior offense.

Harmless error

Further, since we have found no error in the trial court’s admitting of such “other crimes” evidence at defendant’s trial, defendant’s last argument that the admission of the other crimes evidence was an error that was not harmless is without merit.
*899 For the foregoing reasons, defendant’s assignment of error, that the trial court erred in allowing introduction of “other crimes” evidence concerning his prior conviction of possession of marijuana with intent to distribute, is without merit.

ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
1 uIn reviewing the record, it does not appear that defense counsel specifically waived the 24-hour delay between the denial of defendant’s motion for a new trial and sentencing. However, counsel did not object to sentencing, and, in fact, argued for a more lenient sentence based on certain factors. This Court has previously held that a tacit waiver could be inferred under similar circumstances. State v. Bibbins, 13-875 (La.App. 5 Cir. 4/9/14), 140 So.3d 153, citing State v. Jackson, 04-293 (La.App. 5 Cir. 7/27/04), 880 So.2d 69, 75, writ denied, 05-0232 (La.5/6/05), 901 So.2d 1094. Accordingly, we find that no corrective action on this issue is necessary.
Next, although the commitment reflects that defendant was given a proper advisal of the time period for seeking post-conviction relief as required by La.C.Cr.P. art. 930.8, the transcript indicates that the trial court failed to give such an advisal, either during original sentencing of defendant or upon resentencing of defendant as a habitual offender. The transcript prevails when there is a discrepancy between the commitment and the transcript. State v. Lynch, 441 So.2d 732, 734 (La.1983).
If a trial court fails to advise or provides an incomplete advisal, pursuant to La.C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion.[12] Accordingly, we now advise defendant by way of this opinion that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the | ^judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922.
Finally, it is noted that there is an error on the Louisiana Uniform Commitment Order. Specifically, the form says that the adjudication date of defendant’s conviction was September 18, 2013, when it actually was September 13, 2013. This Court has previously remanded a matter for correction of the Uniform Commitment Order after noting a discrepancy. See State v. Long, 12-184 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142. Therefore, we remand this matter to the trial court directing it to correct the commitment reflecting the correct date of defendant’s conviction and directing the Clerk of Court to transmit the original of the corrected commitment to the officer in charge of the institution to which defendant has been sentenced. See La.C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam). Further, a copy of the corrected commitment shall be sent *900 to the Department of Corrections’ Legal Department.

CONCLUSION

For the foregoing reasons, defendant’s conviction and sentence are affirmed. We further remand the matter for correction of an error patent as noted herein.

CONVICTION AND SENTENCE AFFIRMED; REMANDED FOR CORRECTION OF COMMITMENT

. In court, Detective Gamier identified defendant as the driver of this vehicle.

. Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

. Deputy McGuffie also identified defendant in court.

. Ms. Nini also identified defendant in court.

. Deputy Johnson also identified defendant in court.

. The evidence bag lists a total of 28 bags of marijuana.

. This statement was not taped or recorded, but was noted in Deputy Johnson’s report.

. Mr. Cole was accepted by stipulation of the State and defendant as an expert in the field of forensic drug analysis.

. Mr. Cole identified his report as State’s Exhibit 6. He also identified the evidence by the identifying item and lab numbers, as well as his initials on the evidence itself, showing where he sampled it from and that he performed the analysis as well as resealed the bag.

. The State also offered, filed, and introduced into evidence State’s Exhibit 4, a copy of the traffic citation issued to defendant;
*895 State’s Exhibit 5, "the marijuana marked from item number B-12856, of ‘12”, which was admitted over defense counsel’s objection; and State's Exhibit 7, the certified copy of defendant's prior conviction from the "incident arising out of February 13th of 2012,” which was also accepted into evidence over defense counsel's objection.

. At this point in the proceedings, the jury was escorted from the courtroom, and a discussion was held regarding whether Ms. Jones had been advised by independent counsel of the ramifications of making an incriminating statement under oath during the trial. Counsel was provided to Ms. Jones to explain her rights under the circumstances, and she indicated on the record that she wished to proceed with her testimony.

. See State v. Brooks, 12-226 (La.App. 5 Cir. 10/30/12), 103 So.3d 608, ■writ denied, 12-2478 (La.4/19/13), 111 So.3d 1030; State v. Taylor, 12-25 (La.App. 5 Cir. 6/28/12), 97 So.3d 522, 538; State v. Jacobs, 07-887 (La. App. 5 Cir. 5/24/11), 67 So.3d 535, writ denied, 11-1753 (La.2/10/12), 80 So.3d 468; State v. Neely, 08-707 (La.App. 5 Cir. 12/16/08), 3 So.3d 532, 538, writ denied, 09-0248 (La. 10/30/09), 21 So.3d 272; State v. Davenport, 08-463 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 451, writ denied, 09-0158 (La.10/16/09), 19 So.3d 473.